Vesta KIMBLE et al., Appellants,

v.

Fred R. BAKER et al., Appellees.

No. 3188.

Court of Civil Appeals of Texas.

Eastland.

Nov. 25, 1955.

Rehearing Denied Jan. 6, 1956.

Roberts & O'Connor, Hawkins & Dean, Breckenridge, for appellants.

J. G. Harrell, Breckenridge, for appellees.

COLLINGS, Justice.

This suit was brought by Fred R. Baker and H. E. Baker, trustees under a testamentary trust set up by the wills of Mabel Baker and her husband, J. F. Baker, seek-

ing a construction of the wills and trust and of an agreement between plaintiffs and defendants extending the term of the trust. Plaintiffs particularly sought instructions from the court concerning their powers and duties in winding up the trust. Vesta Kimble and her husband, LaVerna Cox and her husband, and Ralph Kimble were named as defendants. The defendants, together with plaintiffs, were devisees under the wills and beneficiaries of the trust.

Plaintiffs alleged that by the terms of the wills the testators left the residue of their estates to the plaintiffs as trustees to be held and distributed in accordance with the terms of the wills until their youngest grandchild had arrived at the age of 21 years, at which time, upon the expiration of the trust, the trustees were directed to distribute the whole of the estate to the named beneficiaries in stated proportions, that is, one-fourth each to Fred R. Baker, H. E. Baker and Vesta Kimble, children of the testators, and one-eighth each to testators' grandchildren, Laverna Cox and Ralph Kimble. Attached to plaintiffs' petition were copies of the wills, each of which contained the following provisions:

"This trust shall terminate upon the arrival at the age of twenty-one years of the youngest of my said grandchildren * * *, and the whole of said trust estate shall thereupon be distributed, free of the trust, * * *.

"Fourth  I give to my executors and trustees hereinafter appointed full power to sell real or personal property at public or private sale, for cash or upon credit, upon such terms and conditions as they may deem sufficient; to continue to carry on the business I am engaged in at the time of my death or to change such business at will; to invest and reinvest in such property or securities as they shall deem expedient without being limited to what is known as legal investments for trustees; to borrow money and to pledge or mortgage any property of my estate as security therefor; to exercise any and all rights and powers necessary or proper in their uncontrolled discretion, to carry on any business of my estate; to compromise and settle any and all claims in favor of the estate or against it; to distribute the whole or any part of my estate in kind by undivided shares or otherwise in the absolute discretion of the trustees. The judgment of my trustees shall be conclusive as to the value of any property included in any division of my trust estate, and it shall not be necessary for my trustees to employ any appraisers or to apply to any court whatsoever for any order ratifying or approving any such division. After the division of my trust estate has been completed by my trustees, they, or the survivor of them, shall file a final account of their acts as trustees with the beneficiaries receiving said estate, and if the account so filed shall be approved in writing by such beneficiaries, then such accounting shall be conclusive in behalf of such trustees upon all such beneficiaries.

"Fifth  I nominate and appoint my sons, Fred R. Baker and H. E. Baker, executors of this my will and trustees thereof, and direct that no bond be required of them in either capacity * *.

*     *     *     *     *     *

"I hereby release my said executors and trustees of and from any liability for any loss or damage that may result to my estate by reason of their management thereof as directed hereunder, and they shall not be liable for any mistakes of judgment but shall only be liable for actual fraud or misappropriation."

Plaintiffs further alleged that on January 13, 1953, Ralph Kimble, the youngest of the grandchildren, became 21 years of age; that all parties involved then executed an agreement extending the trust until the 1st day of September, 1954; that the extension was made for the stated purpose of enabling the trustees to operate the property until the estate taxes had been fully determined and settled; that the estate taxes were finally disposed of on June 24, 1954, but on account of the complexities of the affairs

of the estate it was impossible for plaintiffs to wind up and make distribution of the estate before September 1, 1954. Plaintiffs alleged that prior to such date they had paid all inheritance and estate taxes and had faithfully performed all of the terms, provisions and purposes of the trust except the preparation of a division of the estate among the beneficiaries and the preparation of a final accounting; that they were preparing to make a division among the beneficiaries on September 1, 1954, in accordance with the purpose of the trust but were prevented from doing so because they were advised by defendants to proceed no further in the matter; that defendants urged and contended that plaintiffs' power to act as trustees and to carry out the purpose of the trust was at an end; that such power expired on September 1, 1954; that soon after September 1, 1954, defendants instructed the bank not to honor any more checks on the account maintained by the trustees and instructed the pipe line companies to hold up all funds for oil runs from the leases belonging to the trust and thereby made it impossible for a time for plaintiffs to operate the property. In this connection, plaintiffs further alleged that by the terms of the trust they were directed to make a division of the property upon the expiration of the trust and then to make a final accounting; that the estate consisted of about 40 oil and gas leases and some 80 or 90 oil wells and that considerable time would be required to make a partition and make a final accounting covering eight years operation of the leases. Plaintiffs alleged that they were ready and willing to perform the various duties and obligations as trustees but under the circumstances, and in view of the attitude and contentions of the defendants, they could not do so without great risk of loss to themselves. They alleged that they had completed an inventory of the estate and prepared a partition of the property in accordance with the terms of the wills and had prepared a final accounting; that in the event the court should hold that they had authority as trustees to partition the estate and to file a final accounting, the matter could be closed promptly. Plaintiffs prayed and requested the court to construe the wills and the trust therein provided, together with the agreement of the parties extending the trust and to answer the following questions:

"(1) Do the Trustees have authority to partition the trust property among the beneficiaries in accordance with the terms of the wills after September 1, 1954?

"(2) Do the Trustees have authority to adjust the accounts between the parties in the making of the final account?

"(3) Do the Trustees have the authority to pay the auditor a fee out of the trust funds for the preparing of the final account?

"(4) Do the Trustees have authority to pay a reasonable attorney's fee for the filing of this suit for the construction of the wills?"

Defendants alleged in their answers that the trusteeship had terminated; that plaintiffs had been guilty of fraud and misrepresentations in obtaining the agreement to extend the trust; that, during the existence of the trust, plaintiffs had been guilty of fraud and wrong doing; that they had endeavored to retain excessive possession and control of the trust; that they were now incompetent to administer the trust, had refused to render any accounting; had been guilty of converting property belonging to the trust to their own use and benefit, paying themselves large sums of money to which they were not entitled; that they were hostile to the estate and to defendants' interest therein and had threatened to tear down and destroy the property of the estate.

Defendants prayed for judgment, holding that the trusteeship had terminated, and that plaintiffs be removed as trustees and denied the right to partition the property of the estate; that a receiver be appointed; that an accounting be had and a partition made of the property. Defendants also made similar allegations in their

cross action in which they sought substantially the same relief.

When the case was called, plaintiffs announced ready, subject to their motions and special pleas. The defendants announced that they were not ready on their cross action but announced ready on their answer to plaintiffs' alleged cause of action for a declaratory judgment.

Plaintiffs Fred R. Baker and H. E. Baker had filed a motion to sever defendants' cross action for removal of the trustees and the appointment of a receiver and for an accounting and for a partition of the estate from their suit for a declaratory judgment, urging that the issues presented in the cross action constituted no defense to their suit for instructions as to their powers and duties in winding up the trust under the terms of the will and extension agreement. The motion to sever was granted and the causes of action asserted by defendants for an accounting and appointment of a receiver, removal of the trustees, for damages and for an injunction as set out in their cross action was ordered placed on the docket as a separate suit.

Upon a trial of that portion of the suit in which plaintiffs sought a declaratory judgment defining their status, powers and duties as trustees, judgment was rendered on February 25, 1955, denying defendants the relief of an injunction against the trustees from further acting as such and for the appointment of a receiver as sought in their answer and holding that plaintiffs, as trustees, were, on September 1, 1954, authorized to continue to exercise the powers necessary and proper for the preservation of the trust, to partition the property and to prepare and file a final accounting and that a reasonable time for the performance of such duties would be on or before March 1, 1955; that the trustees had authority to adjust the accounts between the parties in making their final accounting; that they had authority to employ an auditor to prepare a final accounting and to pay him a reasonable fee therefor, and that they had authority to employ an attorney to file suit for a declaratory judgment to determine their status and powers. The court further decreed that plaintiffs, as trustees, should wind up the affairs of the trust on or before March 1, 1955 and should, prior to that date, partition the properties among the beneficiaries by delivering to each his or her share therefrom and should also file in court a complete accounting of the trust properties covering the full period of the trusteeship. Defendants have brought this appeal.

It is first urged by appellants that the court erred in sustaining appellees' motion to sever their suit for a declaratory judgment and for instructions concerning their power and duties as trustees from the issues and causes of action set out in appellants' cross action for an accounting, for removal of appellees as trustees and for an injunction restraining appellees from further acting as trustees, for a receivership of the trust estate and partition of such estate under authority of the court.

Plaintiffs, here appellees, were trustees under the will and extension agreement. By the terms of these instruments the trust expired on September 1, 1954. Plaintiffs' authority to perform any act as trustees after that date was challenged by the defendants, and they, as trustees, brought this suit on September 10, 1954, for a declaratory judgment defining their powers, particularly regarding the questions specifically inquired about. The principal issue involved under plaintiffs' petition was whether under the terms of the trust instruments plaintiffs' power to perform any further act as trustees had, as defendants were contending, fully terminated on September 1, 1954. This disputed question was vital to all parties concerned.

Defendants also contended, in the alternative, in both their answer and cross action that plaintiffs were guilty of such misconduct as trustees that the court should remove them and appoint a receiver to take charge of the trust estate, make an accounting and partition the estate among the beneficiaries. The question presented for determination in this point is whether the

court erred in severing the cause of action presented in defendants' alternative pleading and cross action from the issue raised by plaintiffs' pleadings, that is, whether the trustees' powers finally terminated by the very terms of the trust instruments on September 1, 1954. In our opinion the court did not err in granting the motion to sever. Rule 174(b), Vernon's Ann.Texas Revised Civil Rules, provides:

"The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

Defendants had announced that they were not ready on their cross action which involved their alternative claim of misconduct on the part of the trustees and a plea for removal of appellees as trustees and appointment of a receiver. Under the circumstances it was proper, or at least not an abuse of discretion, for the court to grant plaintiffs' motion for a severance and first determine whether they, as trustees under the terms of the trust instruments, had a reasonable time after the expiration of the trust to close up the affairs of the estate. Plaintiffs were entitled to have this question speedily determined. It was essential to the trustees, to those with whom they dealt and to the estate itself to determine the authority of the trustees. Otherwise, any action on their part concerning the estate would be based upon uncertainty and would be perilous and unsatisfactory to the trustees and all other parties concerned. The defendants' claim of fraud and misappropriation by the trustees is not prejudiced by the severance. The wills provided that the trustees should first make a partition of the property and then file an accounting, which, if approved in writing by the beneficiaries, should be conclusive on all parties and further provided, in effect, that the trustees were to be liable "for actual fraud or misappropriation." The court, in entering the declaratory judgment, ordered the accounting to be made. If upon the trial of their cross action for removal of the trustees, appellants are able to successfully challenge the accounting and distribution made by the trustees and to establish the alleged fraud and misappropriation by the trustees, they will be entitled to full relief. The wills provided, in effect, that the trustees, after filing their final accounting, would be liable for "fraud or misappropriation." The trustees would be liable for such misconduct under the law even in the absence of such a provision in the wills. There is no showing of the existence of any facts which would render the severance and separate trial of the issues and causes of action in question unduly prejudicial to any right that appellants have. Appellants, as defendants, announced that they were not ready on their allegations of fraud and misappropriation until plaintiffs had made an accounting. The court did not abuse its discretion in granting the motion to sever, and in proceeding to trial on the issues raised in the plaintiffs' petition.

Appellants contend that the court erred in refusing to hear evidence on "many disputed questions * * * demanding forcible sanctions." The evidence sought to be introduced by appellants bears upon issues of misconduct by the trustees as alleged in appellants' cross action. These issues were severed and will be determined upon the trial of the cross action. The court did not err in sustaining objections to such evidence.

■■ Appellants next contend that the court erred in entering a declaratory judgment under the facts and circumstances in evidence and urge that the court was without power or jurisdiction to enter such a judgment. We cannot agree with this contention. The use of a declaratory judgment to determine the powers and duties of trustees is authorized by statute. Article 2524, Vernon's Annotated Revised Civil Statutes. Also see Arterbury v. United States Nat. Bank of Galveston, Tex.Civ.App., 194 S.W.2d 803. In its discretion a court may enter a declaratory judgment where the judgment will end the

controversy between the parties or will serve some useful purpose. Joseph v. City of Ranger, Tex.Civ.App., 188 S.W.2d 1013 (Ref.W.M.).

Appellees were trustees of a trust estate which, under the terms of the wills and the extension agreement, terminated on September 1, 1954. Their right to act as trustees after September 1, 1954, for the purpose of winding up the affairs of the estate or for any other purpose, had been questioned by appellants. This suit was brought by the trustees for a declaratory judgment and for instructions concerning their powers. It thus appears that there was a bona fide dispute between the parties concerning the power of the trustees to wind up the affairs of the estate and to distribute the estate among the beneficiaries within a reasonable time after September 1, 1954, the date of expiration of the trust. The judgment disposed of this dispute. The judgment was beneficial and served a useful purpose in that it settled such controversy and enabled the trustees to proceed with the winding up of the affairs of the estate if done in accordance with the terms of the wills with safety to themselves and persons with whom they dealt as trustees. There was no basis for a receivership on the theory that under the very terms of the trust instruments the trustees were wholly without authority to perform any further duty or do any other act as such, and that a receiver was therefore necessary to take charge of the estate. Any relief to which appellants may be entitled in case they are able to establish fraud in the partition of the estate or misappropriation by the trustees after an accounting is filed, may be had upon a trial of the cross action. The issues presented in appellees' petition for a declaratory judgment were disposed of by the judgment.

■ Appellants particularly urge that the court "erred as a matter of law in holding that the trustees had a reasonable time after the expiration of the trust in which to make an accounting and partition of the property between the beneficiaries."

The wills provide, in effect, that upon the termination of the trust the trust property should be distributed among the beneficiaries and that after the division the trustees should file a final account with the beneficiaries. The rule in such cases is that subject to the provisions of the trust instrument, the trustee has such powers and duties as are necessary for winding up the estate and has the duty to make a reasonably prompt distribution. 90 C.J.S., Trusts, § 343, p. 604; Restatement of the Law of Trusts, Vol. 2, page 344. There was nothing in the trust instruments inconsistent with the trustees' exercising such powers as were necessary to wind up the trust estate within a reasonable time after the expiration of the trust. The wills provided, in effect, that upon the termination of the trust the trust estate should "thereupon be distributed," and further provided that after the division of the trust was completed, the trustees should file a final account.

It was found in the judgment rendered on February 25, 1955, that a reasonable time after expiration of the trust on September 1, 1954, for the trustees to partition the property and to prepare and file an accounting would be on or about March 1, 1955. The evidence shows that the estate consists of about 80 or 90 producing oil wells on approximately 40 leases and a large amount of oil field equipment and machinery. The operation of the estate and its affairs are complicated and complex. On September 1, 1954, the date of the expiration of the trust, appellants demanded an immediate distribution of the trust estate and informed appellees that they no longer had any powers as trustees. Shortly thereafter, appellants wrote letters instructing the bank to honor no further checks of the trustees and the pipe line companies to make no further oil payments. Appellants warned such parties that any further dealings with appellees as trustees would be at their own peril. On September 10, 1954, appellees filed this suit seeking instruction concerning their powers and duties. Under the circumstances, we cannot say that the court erred in holding on February 25, 1955, the date of

the judgment, that a reasonable time for the trustees to partition the property and file a final accounting would be on or before March 1, 1955.

■■ We overrule the contention that the court erred in holding the trustees were authorized to employ an attorney for the prosecution of this suit and to pay him a reasonable fee. We cannot say as a matter of law that the bringing of this suit by the trustees for instructions under the facts of this case was not in good faith. The trustees, under the law, had a reasonable time after the termination of the trust to make a distribution of the assets and to make an accounting. Their power to do this was questioned by appellants.

The trustees were entitled to apply to the court for instructions concerning their powers and to incur the expense of making the application. Article 7425b–25, Vernon's Texas Civil Statutes; 54 Am.Jur., page 491; West Texas Bank & Trust Co. v. Matlock, Tex.Civ.App., 172 S.W. 162. The trustees were also authorized to pay reasonable fees to an auditor for the preparation of a final account.

The judgment further provided that the trustees in making their final accounting should adjust the accounts of the respective beneficiaries so that the property might be divided at the final partition in accordance with the provisions of the wills. Appellants complain of this provision in the judgment and urge that the court erred in so holding. In our opinion, the court did not err in holding that the trustees had authority to adjust accounts between the parties. The trustees had and have the duty in dividing the property to do so in accordance with the wills. If it should appear that there have been or are errors in distribution among the beneficiaries prior to the final partition, then it will be their duty at that time to make whatever adjustments are necessary to give to each beneficiary that to which he is entitled under the terms of the wills.

If, in the final partition and accounting made by the trustees, and presentation there-

of to appellants for inspection, as provided by the wills, it should appear that the trustees are guilty of misappropriation of the assets of the estate or of fraud in the partition and division of the estate among the beneficiaries, then appellants will have their remedy upon the trial of their cross action.

We have examined all points presented and find no reversible error.

The judgment of the trial court is affirmed.