In the Matter of the ESTATE of Robert A. MARTIN, Deceased.

No. 5105.

Court of Civil Appeals of Texas.

El Paso.

Oct. 5, 1955.

Rehearing Denied Nov. 2, 1955.

Guinn & Guinn, El Paso, for appellant.

Burges, Scott, Rasberry & Hulse, Schyler B. Marshall, J. F. Hulse, El Paso, for appellees.

McGILL, Justice.

This is a will contest case. Appellant, Helene Martin, the widow of the deceased Robert A. Martin, was contestant, and appellees Margaret Wilder and Evelyn Dixon, sisters of the deceased, who were appointed independent executrices in the will, were contestees. Trial was to a jury, and on answers to special issues submitted the court rendered judgment admitting the will to probate, and appointing appellees independent executrices thereof.

Appellant's first point is that "The court erred in entering judgment because the verdict is contrary to the evidence." This point is too general to call our attention to any particular ruling or action of the trial court of which appellant complains, and presents nothing for this court to review. Novita Oil Co. v. Smith, Tex. Civ.App., 247 S.W.2d 151.

The second point is that the court erred in excluding the testimony of witness Ruth Molinar to the effect that deceased had been told in the presence of one of the proponent sisters and principal beneficiaries that he must change his will so as to keep his property in the family. The appellees counter that the court should not have permitted the appellant to amend her contest in the District Court so as to allege undue influence as an additional ground for attacking the will, such ground not having been presented or alleged in the probate court, and therefore the testimony of Ruth Molinar, which related to the question of undue influence, was not admissible and was properly excluded. The rule seems to be well settled that on appeal to the District Court from probate matters originating in the County Court, the District Court has only appellate jurisdiction to revise, declare void or set aside orders and decrees of the County Court sitting in Probate, and that no enlargement of the issues tried in the County Court will be permitted on appeal. Goodman v. Schwind, Tex.Civ.App., 186 S.W. 282; Carr v. Froelich, Tex.Civ.App., 220 S.W. 137; Magee v. Magee, Tex.Civ.App., 272 S.W. 252; Becknal v. Becknal, Tex.Civ.App., 296 S.W. 917; Shropshire v. Salyer, Tex.Civ.App., 110 S.W.2d 917; Brewer v. Brewer, Tex.

·Civ.App., 237 S.W.2d 369. Therefore, since the appellant should not have been permitted to amend her petition so as to allege undue influence in the District Court, the court did not err in refusing to permit ·her to introduce testimony bearing on the question of undue influence.

For like reason the court did not err in refusing to admit testimony of Ruth Molinar as to the conversation she overheard when one of the appellees said to the testator: "Robert, you must go to see the lawyer so that he will fix it so that this property remains in our family." Such testimony, if relevant at all, could bear only on the question of undue influence, which as we have held should not have been permitted as a ground of contest. Furthermore, such statement could not possibly constitute undue influence as that term is known in the law. We have read and carefully considered the entire statement of facts and find no evidence of any probative force of undue influence.

■ Although not specifically raised as a point, appellant complains of the following argument by appellees' counsel:

"One of them was I believe ERP, European Recovery Program. This looks like a little European Recovery Program of her own here. America sends billions over to Europe on a · European Recovery Program. She is over there. She has got a little recover–program going on right here, right now, to see what she can do about this property here in El Paso to go to her in *Luzern,* Switzerland.

"Now they tell you that these two sisters over here had a *malious* round of gossip to discredit Helene. Who begin to complain about that situation? They couldn't get Rob out of there, he owned a part interest in the house. What were they going to do about Helene who was living there with him? Who started it? Was it Mrs Wilder, was it Mrs. Dixon, these two sisters? No. It was his mother. Mr. Kemp tells you he had been a family friend and lawyer and had never charged the family—except Bob—anything for his services because they were boyhood chums or pals and had grown up together. Bob's mother went to Mr. Kemp and complained about it and wanted to know what she could do to get Helene out. This came from Robert's mother, and from their mother."

Appellant made no objection to this argument. We think it was not so, inflammatory that its harmful effect, if any, could not have been cured by a. proper instruction from the court, and therefore appellant waived any harmful ·effect ·it. may have had by failing to object.

We think we have covered the points presented in appellant's brief. However, the points are not briefed separately, in conformity with the rules, and for this reason it is possible that we may have overlooked some of appellant's points. If so appellant will undoubtedly clarify these points on motion for rehearing.

. The judgment of the trial court is affirmed.